IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

v.  Criminal No. 4:18cr27 (DJN)

CHRISTOPHER ROBERTSON,
Defendant.

**MEMORANDUM OPINION**

On March 5, 2021, after considering all of the evidence presented during trial, a jury found Defendant Christopher Robertson ("Defendant") guilty on twenty counts related to Defendant's participation in a string of thirteen robberies that occurred in 2013 and 2014. Defendant now asks the Court to overturn the jury's verdict or, alternatively, vacate the judgment and grant a new trial. This matter now comes before the Court on Defendant's Motion for Judgment of Acquittal and/or a New Trial ("Def.'s Mot." (ECF No. 269)). For the reasons set forth below, the Court hereby DENIES Defendant's Motion.

## I. BACKGROUND

### A. Indictment and Trial

On August 12, 2019, a grand jury returned a 26-count Second Superseding Indictment (ECF No. 110), charging Defendant with twenty offenses.[1] Specifically, the grand jury charged

---

[1] In Count Twenty-Three, the Second Superseding Indictment also charged Defendant with felon in possession of a firearm. (Second Superseding Indictment ("Indictment") (ECF No. 110) at 25.) That charge arose from conduct unrelated to the robbery counts. As such, the Court severed that count (ECF No. 139) and conducted a jury trial on that charge alone in March 2020 (ECF Nos. 155-56). On March 4, 2020, a jury returned a guilty verdict on Count Twenty-Three. (ECF No. 157.) Counts Twenty-Four through Twenty-Six bring charges against co-defendant Ezekiel Keaton. (Indictment at 26-29.)

Defendant with:  Conspiracy to Commit Robbery, 18 U.S.C. § 1951 (Count One); thirteen counts of Robbery Affecting Interstate Commerce, 18 U.S.C. § 1951(a) (Counts Two — Thirteen, Sixteen); and, six counts of Brandishing a Firearm During a Crime of Violence, 18 U.S.C. § 924(c)(1)(A) (Counts Fourteen, Fifteen, Eighteen, Twenty, Twenty-One and Twenty-Two).[2] (Indictment at 1-17, 20, 22-24.)  The Indictment tethered each of the brandishing counts to a specific substantive robbery charged in the earlier counts.  Specifically, each of the brandishing counts related to the substantive robbery counts as follows:  Count Fourteen (related to Count Eight); Count Fifteen (related to Count Sixteen); Count Eighteen (related to Count Nine); Count Twenty (related to Count Eleven); Count Twenty-One (related to Count Twelve); and, Count Twenty-Two (related to Count Thirteen).  (Indictment at 16-17, 20, 22-24.)  Ultimately, the Government submitted Counts Six and Ten — not related to any brandishing charges — as attempted robberies.  (Special Verdict Form (ECF No. 257) at 2.)

The Court conducted a jury trial beginning on March 1, 2021.  During trial, the jury heard testimony from nineteen witnesses to include three individuals who testified that they participated in various robberies at Defendant's direction:  Michael Ellison ("Ellison" or "Red"), Ezekiel Keaton ("Keaton") and Aquilla Jones ("Jones").  Broadly speaking, all of these witnesses testified that Defendant selected locations to rob (generally convenience stores) and that Defendant accompanied them to the locations when they undertook the robbery.  (Tr. at 55-106; 235-254; 284-310.)  But, because security cameras could identify him through a retinal scan, Defendant insisted that he could not physically be present when the robberies took place.

---

[2]   In Counts Seventeen and Nineteen, the Indictment brought two additional brandishing charges.  (Indictment, at 19, 21.)  The Court dismissed both of those Counts with the Government's agreement.  (ECF No. 243; Tr. at 503:24-25; 504:1-5.)

(Tr. at 98:1-2; 251:17-23; 335:23-25; 336:1-12.) Accordingly, Defendant kept lookout and advised the others when "it [was] clear to go in." (Tr. at 93:1-18.)

To begin, Ellison described the first group of robberies that he and Defendant committed, which took place between September 24, 2013 and October 13, 2013.[3] The first such robbery — charged in the Indictment as Count Two — targeted a Gulf Gas Station in Fredericksburg, Virginia. (Tr. at 61:7-11; Gov't Ex. 2B.) After identifying photographs depicting the gas station, Ellison confirmed that he and Defendant robbed that location. (Tr. at 63:17-20.) Specifically, the two rode together in a single vehicle, with Ellison driving the vehicle to the gas station and Defendant driving it away after the robbery had taken place. (Tr. at 63:21-25; 64:1-2.) Ellison further testified that Defendant "made the call" on when to commit the robbery by "call[ing Ellison] on [his] cell phone and tell[ing him he] was clear to go in." (Tr. at 64:12-21.) Additionally, Ellison identified himself in a photograph as a man dressed in black, equipped with a "BB gun" and "robbing the store clerk." (Tr. at 65:2-13; Gov't Ex. 2.) Finally, Ellison averred that he succeeded in getting money from that robbery. (Tr. at 68:12-14.)

Count Four relates to the robbery of a Big Lots store in Yorktown, Virginia. (Special Verdict Form at 1.) As for this robbery, Ellison identified a picture of the Big Lots and testified that he came up with the idea to rob it. (Tr. at 68:15-21; Gov't Ex. 4A.) When asked how he recognized the photograph depicting the Big Lots, Ellison stated: "I robbed it." (Tr. at 68:18-19.) Ellison explained how Defendant drove behind a line of trees situated to the rear of the Big Lots to await Ellison while he robbed the store. (Tr. at 68:23-25; 69:1-8.) After the robbery,

---

[3] In his Motion, Defendant only raises a sufficiency challenge with respect to Counts Two, Four, Five, Twelve, Thirteen and Fifteen. (Def.'s Mot. at 23.) Accordingly, unless the other robberies prove relevant to Defendant's § 924(c) challenge or to narrative integrity, the Court focuses its recitation of the record to those portions bearing on the counts subject to a sufficiency challenge.

3

Ellison crossed "back through the trees," met Defendant on the other side, and the two drove away together. (Tr. at 69:1-8.) Moreover, Ellison testified that he and Robertson did not go to Ellison's house to divvy up the money, because "[his grandparents] would know something is going on. So don't want to go there. We went the opposite direction." (Tr. at 111:16-25; 112:1.)

The assistant manager of the Big Lots, Lori Woods ("Woods"), also testified. (Tr. at 164.) Woods answered affirmatively when asked if "there was a robbery at [her] store" in 2013. (Tr. at 165:2-4.) When questioned about specific details surrounding the robbery, Woods stated that she observed a person, dressed in all black, holding a weapon to her cashier's head. (Tr. at 165:15-17.) Woods then moved the customers to the back room to ensure their safety. (Tr. at 165:19-25.) When she emerged from the back room, the robbers had fled, and the police were on site. (Tr. at 166:15-25; 167:167:1-12.)

In Count Five, the jury found Defendant guilty of robbing a Fast Mart convenience store in Spotsylvania, Virginia. (Special Verdict Form at 2.) Ellison testified that he and Defendant robbed the Fast Mart together. (Tr. at 75:20-22.) Ellison further stated that the aftermath of this robbery did not go according to plan. Specifically, Ellison and Defendant planned to meet on the interstate entrance, whereupon Ellison would toss the money obtained from the robbery to Defendant. (Tr. at 75:23-25; 76:1-9.) However, because a tow truck pulled up behind them, they went back to a house and counted the money there instead. (Tr. at 76:1-9.) Afterwards, Ellison left the house and returned to the gas station to fill his tank. (Tr. at 76:1-9.) Once there, he noticed that the police "were in the parking lot waiting for" him. (Tr. at 76:1-9.)

Following the Fast Mart robbery, on October 13, 2013, Defendant and Ellison concocted a plan to rob a Food Lion grocery store. (Tr. at 76:19-25.) This effort, charged in Count Six as

4

an attempted robbery, ultimately did not prevail, because an employee chased Ellison out of the store. (Tr. at 77:25; 78:1-10.) After this event, Ellison testified that his relationship with Defendant "was kind of on the rocks," but that they nonetheless decided to case a Hess gas station a few weeks later. (Tr. at 78:14-23.) However, a police officer confronted Ellison and Defendant right before Ellison could enter the store. (Tr. at 79:2-25; 80:1-24.) As a result, the two men abandoned the planned robbery and Ellison decided to move to Georgia, given his fear that "things were getting a little too hot." (Tr. at 80:1-25; 81:1-2; 112:5-8.)

Over a year later, Ellison returned to Virginia and, along with Defendant, undertook a second series of robberies. (Tr. at 81:1-6; 117:15-25; 118:1-5.) This time, however, Jones (Defendant's girlfriend) and Keaton (the best friend of Defendant's nephew) joined the mix. (Tr. at 81:1-25; 287:1-25.) On December 10, 2014, the group targeted a Smoke Shop in Chesapeake, Virginia. (Tr. at 91:7-25; 92-1-25; 93:1-18; Gov't Exs. 10, 10A, 10B.) Ellison testified that he and Keaton entered the Smoke Shop together and identified a photograph of himself wearing a skeleton mask and carrying a gun inside the store. (Tr. at 91:7-25; 92:1-25; Gov't Ex. 10A.) Ellison, having also recognized a video of the incident, testified that Keaton attempted to "rob the clerk," but that the clerk "took off running to the back before [they] could get [their] hands on him." (Tr. at 92:1-15; Gov't Ex. 10.) Because the clerk had escaped, Ellison and Keaton then fled the store and ran back to their vehicle. (Tr. at 92:13-25.) Meanwhile, Defendant and Jones kept lookout in another car, with Jones as the driver. (Tr. at 93:1-5.) For this conduct, the jury found Defendant guilty in Count Ten of attempted robbery. (Special Verdict Form, at 2.)

In Count Twelve, the jury found Defendant guilty of robbing a Gulf gas station in Fredericksburg, Virginia. (Special Verdict Form at 3.) According to Ellison, he and Defendant robbed this same gas station twice — once in 2013 (Count Two) and once in 2014 (Count

Twelve). (Tr. at 95:6-22.) With respect to the 2014 robbery, Ellison testified that he and Keaton entered the store while Defendant and Jones waited in a car nearby. (Tr. at 96:1-7.) Ellison further identified a video depicting the robbery, and testified that the video showed him holding a gun while in the store. (Tr. at 96:1-12; Gov't Ex. 12.) Keaton identified the same video, and explained that Ellison always wore a white mask while Keaton always wore a black mask when they robbed stores together. (Tr. at 297:2-11.) The video shows the two men pointing guns at the store clerk, who then opens the cash register drawer. (Gov't Ex. 12.) Ellison then reaches into the drawer, retrieves money, and exits the store with Keaton. (Gov't Ex. 12.)

Shortly after the Gulf gas station robbery, Defendant and his cohorts robbed a Subway restaurant in Fredericksburg. (Tr. at 96:16-22; Gov't Ex. 13A.) Charged as Count Thirteen, Ellison testified that he, Defendant, Keaton and Aquilla participated in this robbery. (Tr. at 96:21-24.) This robbery went awry, however, as an off-duty police officer managed to get pictures of their license plates as the group fled the robbery scene. (Tr. at 97:1-10.) Consequently, authorities arrested Ellison the following evening. (Tr. at 97:1-10; 99:11-13.)

With respect to the Subway robbery, Kaitlyn Laurinaitis ("Laurinaitis"), the store clerk, also testified. (Tr. at 229.) According to Laurinaitis, she had her back turned to the door when she heard two people enter and demand that everyone "Get on the floor." (Tr. at 229:5-15.) The men then prompted her to open the cash register drawer, which she did. (Tr. at 229:9-20.) Because she "was so nervous," she "took out the entire drawer and just handed it" over to them. (Tr. at 229:16-20.) The men then fled the restaurant, with the cash register in hand. (Tr. at 230:12-15.)

Finally, in Count Sixteen, the jury found Defendant guilty of robbing a Shell gas station in Newport News, Virginia.[4] (Special Verdict Form, at 4.) For this robbery, Ellison identified a photograph of he and Keaton in the gas station and testified that the photograph depicted them "robbing the store." (Tr. at 87:22-25; 88:1-25; 89:1-9; Gov't Ex. 14.) Similarly, Ellison recognized a video showing "[he] and Keaton robbing the store." (Tr. at 89:10-23; Gov't Ex. 14A.) That video further captured a recording of Ellison reaching into the cash register, taking money, and leaving the store with Keaton. (Gov't Ex. 14A.) After the robbery, Ellison testified that the group divvied up the stolen money. (Tr. at 91:2-4.)

On March 4, 2021, the Court charged the jury with its instructions, and the parties made their closing arguments. The next day, on March 5, 2021, the jury found Defendant guilty on all counts.

### B.    The Jury Instructions and Special Verdict Form

On June 16, 2020, the Court entered a Scheduling Order that required the parties, no later than seven days before the Final Pretrial Conference, to jointly file a set of jury instructions. (Scheduling Order (ECF No. 177) at 1-2.) Pursuant to that Order, the Court required the parties to indicate any objection to an instruction by labeling the instruction as either, *e.g.*, "G-1" (if Defendant objected) or "D-1" (if the Government objected). (Scheduling Order at 2.) Additionally, if a party objected to an instruction, the Court ordered that such objection "be filed not later than three (3) calendar days after the filing of the requested jury instructions." (Scheduling Order at 2.)

---

[4]    Defendant incorrectly refers to Count Fifteen as the substantive robbery count. (Def.'s Mot. at 23.) However, Count Fifteen represents the brandishing count associated with the robbery charged in Count Sixteen. (Special Verdict Form at 4.) Accordingly, the Court construes Defendant's sufficiency challenge to Count Fifteen as actually directed toward Count Sixteen.

7

In accordance with that Order, on November 3, 2020, the parties filed Proposed Jury Instructions (ECF No. 200), reflecting that the parties had agreed on all of the jury instructions applicable to the case. Indeed, Defendant did not file any objections to the jury instructions. Due to complications related to the Coronavirus-19 ("COVID-19") pandemic, the Court rescheduled the trial from December 2020 to March 2021. (ECF Nos. 209, 214.) As a result of that rescheduling, the parties refiled their proposed joint jury instructions, again indicating agreement on all instructions. (ECF No. 222.) And once again, Defendant did not file any objections to the jury instructions.

Additionally, during trial, Defendant raised no objections to the proposed jury instructions. Indeed, aside from requesting one additional instruction (which the Court granted), Defendant repeatedly represented his satisfaction with the jury instructions. (Tr. at 511:6-25; 512:1-15 (referring to the "instructions which we have agreed, Judge."); Tr. at 522:5-25; 523:1-3 (answering "No, sir," when the Court asked if Defendant had any objections to the final jury instructions before the Court read the instructions to the jury); Tr. at 604:25; 605:1 (stating that the "instructions are adequate, Your Honor," after the Court read the instructions to the jury).)

Relevant here, Instruction No. 42, entitled "The Nature of the Offense Charged — Counts 2-13 and 16," charge that Defendant "attempt[ed] to obstruct, delay and affect commerce" "by knowingly and willfully committing robbery" "in that [Defendant] did unlawfully take and obtain property" from the businesses charged in each count. (Court's Final Instructions to the Jury (ECF No. 250) at 52; Tr. at 576:25; 577:1-25.) Likewise, Instruction No. 43, which sets forth the relevant statutory text of 18 U.S.C. § 1951(a), instructs that a person is guilty of robbery when that person "in any way or degree obstructs, delays, or affects commerce" "by robbery" "or attempts" "so to do." (Court's Final Instructions to the Jury, at 53; Tr. at

578:8-18.) Instruction No. 44 outlines the three essential elements that the Government had to prove for a conviction on Counts Two — Thirteen and Sixteen, and reads as follows:

> One: Defendant CHRISTOPHER ROBERTSON, attempted to induce the victims, to part with the property described in Counts 2-13 and 16, of the Amended Indictment, namely United States currency;
>
> Two: the defendant, CHRISTOPHER ROBERTSON, did so knowingly and deliberately by robbery; and
>
> Three: In so acting, interstate commerce, or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree.

(Court's Final Instructions to the Jury, at 54; Tr. at 578:19-25; 579:1-11.) In addition, Instruction No. 44 included a three-columned chart in which it specified that Counts Six and Ten constituted attempted robberies.[5] (Court's Final Instructions to the Jury, at 55; Tr. at 580:12-15; 581:1-3.) Continuing, Instruction No. 46 provided this definition of the term "robbery":

> The term "robbery" means the unlawful taking or obtaining of personal property of another against his will by threatening or actually using force, violence, or fear of injury, immediately or in the future, to person or property.

(Court's Final Instructions to the Jury, at 58; Tr. at 583:13-17.) And finally, Instruction No. 48 explained that the second element required the Government to prove, beyond a reasonable doubt, that Defendant "unlawfully took or attempted to take property against the victim's will, by actual or threatened force." (Court's Final Instructions to the Jury at 60; Tr. at 583:21-25.)

At the end of trial, the Court provided a Special Verdict Form on which the jury made its findings. That form required the jury to make findings as to guilt on each of the relevant counts charged in the Indictment. (Special Verdict Form, at 1-7.) Moreover, each count contained a

---

[5] Moreover, Instruction No. 54 contained a four-columned chart in which it specified which brandishing count related to which substantive robbery. (Court's Final Instructions to the Jury at 67; Tr. at 588:1-25; 589:1-25; 590:23.)

9

double-columned table that listed in the first column the date of the robbery and in the second column the address and location of the business robbed. (Special Verdict Form at 1-7.) Additionally, for each of the brandishing counts, the Special Verdict Form included a third column that listed which substantive robbery count related to each brandishing count. (Special Verdict Form at 3-7.) And finally, the Special Verdict Form designated — in the second column of the table — that Counts Six and Ten constituted attempted robberies. (Special Verdict Form at 2.)

### C. Defendant's Motion

On June 21, 2021, Defendant filed the instant Motion. Defendant seeks to set aside the jury's verdict as to Counts Two, Four, Five, Twelve, Thirteen and Sixteen, based on a sufficiency of the evidence argument. Specifically, Defendant posits that the evidence failed to sufficiently demonstrate that Defendant's accomplices succeeded in retrieving money or another thing of value during these robberies. (Def.'s Mot. at 22-23.)

Additionally, Defendant challenges his convictions on each of the § 924(c) brandishing counts. (Def.'s Mot. at 19-22.) On this front, Defendant argues that the jury instructions suffered from a fatal deficiency in that they permitted the jury to find Defendant guilty on the completed robbery counts, even if the evidence failed to prove the robbery's completion. (Def.'s Mot. at 19-22.) Defendant points to Instructions 42, 43, 44, 46 and 48 and complains that these "instructions [were] utilized for both the completed and failed robberies, without distinction." (Def.'s Mot. at 21.) As such, Defendant maintains that "the jury, regardless of the evidence presented, believed that it was permitted to find [Defendant] guilty of the predicate 'crimes of violence' . . . whether they were consummated robberies or attempted ones." (Def.'s Mot. at 21.) And, because attempted robbery cannot serve as the predicate crime of violence for a § 924(c)

10

conviction, Defendant reasons that his brandishing convictions require vacatur. (Def.'s Mot. at 19-22 (citing *United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020).)

On August 5, 2021, the Government filed its Response of United States to Defendant's Motion for Judgment of Acquittal and for a New Trial ("Gov't Resp." (ECF No. 279).) On August 11, 2021, Defendant filed his Reply to Government's Response ("Def.'s Reply" (ECF No. 280), rendering the matter now ripe for review.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Upon such motion, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In deciding whether to set aside a guilty verdict, the Court must consider "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). Accordingly, "[a] guilty verdict should be upheld if it is supported by substantial and competent evidence." *United States v. Whyte*, 2018 WL 521593, at *3 (W.D. Va. Jan. 23, 2018) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

In deciding whether substantial and competent evidence exists, the Court should not decide whether the evidence convinces it beyond a reasonable doubt of the defendant's guilt, only whether evidence exists "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). Importantly, the Court may not weigh the

evidence, draw inferences from the facts, resolve evidentiary conflicts or assess the credibility of witnesses, for such functions fall within the province of the jury." *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983). "Further, 'if the evidence supports different, reasonable interpretations, the jury decides the interpretation to believe.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)). Deference to the jury requires the Court to "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995). Ultimately, a defendant challenging the sufficiency of the evidence supporting his conviction "must overcome a heavy burden." *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995).

Pursuant to Federal Rule of Criminal Procedure 33(a), "the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial based on newly discovered evidence must be filed within three years of the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1). Otherwise, the "interest of justice" standard requires that some grounds exist that cause "the fundamental fairness or integrity of the trial result [to be] substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006). Additionally, "there is also a strong interest in ensuring that convictions are not allowed to stand if infected by, or based on, an incorrect application of the governing law." *Id.* A motion based on grounds other than newly discovered evidence must be filed within fourteen days of the verdict or finding of guilt.[6] Fed. R. Crim. P. 33(b)(2).

---

[6] At the conclusion of trial, the Court orally granted Defendant an extension until May 30, 2021, to file any post-trial motions. (Tr. at 702:10-13.) Subsequently, the Court granted a further extension until June 21, 2021. (ECF No. 267.)

When a defendant challenges an allegedly improper jury instruction, the defendant must object to the instruction before the jury retires to deliberate. *United States v. Olano*, 507 U.S. 725, 731-32 (1993). Accordingly, when a defendant fails to timely object, plain error review controls the analysis. Fed. R. Crim P. 30(d) ("A party who objects to any portion of the instructions . . . must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."); Fed. R. Crim. P. 52(b) (setting standard for plain error review); *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998). Under plain error review, a defendant must show "that an error occurred, that the error was plain, and that the error affected his substantial rights." *Id.*

### III. ANALYSIS

The Court will address in turn each of the two grounds for acquittal and/or a new trial that Defendant advances in his Motion.

#### A. Substantial Evidence Exists to Permit A Rational Juror to Convict Defendant of the Challenged Substantive Robbery Counts.

Defendant's first argument asks the Court to find that insufficient evidence existed at trial to show that Defendant's accomplices successfully completed several of the robberies. As noted, a challenge to the sufficiency of evidence presents a heavy burden, as the Court must consider the evidence presented at trial in a light most favorable to the Government and make all inferences and credibility determinations in its favor. *Hoyte*, 51 F.3d at 1245. In so doing, the Court must "assume that the jury resolved all contradictions in testimony in favor of the Government." *United States v. United Med. and Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993); *see also United States v. Beidler*, 110 F.3d 1185, 1190 (4th Cir. 1997) ("[I]f the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.") (internal quotations omitted). Indeed, the Court "will sustain the jury's verdict if *any*

13

rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011) (emphasis in original). "Just as the uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction, the uncorroborated testimony of an informant may also be sufficient." *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997).

Sufficient evidence exists in the record to permit a rational juror to find that Defendant's accomplices successfully completed the robberies charged in Counts Two, Four, Five, Twelve, Thirteen and Sixteen. To start, several of the counts are supported by Ellison's specific testimony that the accomplices succeeded in getting money during the relevant robbery, or otherwise counted the money following the robbery's completion. (Tr. at 68:12-14 (Count Two); Tr. at 111:16-25; 112:1 (Count Four); Tr. at 76:1-9 (Count Five); Tr. at 91:2-4 (Count Sixteen).) Accordingly, because Ellison testified that he collected money from these robberies (or counted the money thereafter), a rational juror could find that he did.

As for Count Four, Ellison testified that he "robbed" the Big Lots. (Tr. at 68:18-19.) In addition, Ellison stated that he and Robertson did not travel to Ellison's grandparents' house to divvy up the money, because "[t]hey would know something is going on." (Tr. at 111:16-25.) Instead, they "went the opposite direction." (Tr. at 111:23-25.) Moreover, Woods testified that she witnessed a man, dressed in all black, holding a weapon to the cashier's head. (Tr. at 165:17.) This evidence, when viewed together, substantially supports Defendant's conviction in Count Four. Specifically, a rational juror could interpret Ellison's testimony that the two men did not go to his grandparents' house to split the money as reflective of the fact that he succeeded in stealing money from the Big Lots. Moreover, testimony of a man dressed in all black and holding a weapon to a cashier's head reasonably evidences that the man took money from the

cashier. Viewing the evidence in a light most favorable to the Government, substantial evidence supports Defendant's conviction on Count Four.

In Count Twelve, Defendant and his accomplices targeted the Fredericksburg Gulf gas station. In support of this charge, Ellison testified that he and Keaton entered the store while Defendant and Jones waited in their car nearby. (Tr. at 96:1-7.) Additionally, both Ellison and Keaton recognized a video depicting the robbery. (Tr. at 96:1-12; 297:2-11.) That video showed Ellison reaching into the drawer, retrieving money and fleeing the store with Keaton. (Gov't Ex. 12.) Thus, given that video evidence showed Defendant's accomplices taking money from the cash register and leaving the store, a rational jury could believe what their own eyes observed.

Turning to Count Thirteen, substantial evidence again supports Defendant's conviction. As for this Count, Subway clerk Laurinaitis testified about the details of the robbery. (Tr. at 229:5-25.) Specifically, she testified that two men demanded that she open the cash register drawer. (Tr. at 229:9-20.) After she complied with their demand, Laurinaitis handed the entire drawer over to them. (Tr. at 229:16-20.) The men then fled the restaurant with the cash register. (Tr. at 230:12-15.) Accordingly, a jury could reasonably find that Defendant's accomplices stole money from the Subway.

Finally, Count Sixteen involves the 2014 Shell gas station robbery. Like the robbery underlying Count Twelve, video evidence captured this offense conduct. (Gov't Ex. 14A.) Specifically, after Ellison corroborated that the video depicted the charged robbery, the jury watched as Ellison reached into the cash register, grabbed money and then fled the store with Keaton. (Tr. at 89:10-23; Gov't Ex. 14A.) Additionally, and as mentioned above, Ellison testified that the group doled out the stolen money after the robbery. (Tr. at 91:2-4.) Again, a

15

reasonable jury could credit the video evidence and testimony to find that Ellison succeeded in stealing money from the gas station.

For these reasons, Defendant cannot carry the heavy burden that both Rule 29 and 33 require of him. Contrary to Defendant's assertions, sufficient evidence establishes Defendant's guilt. As a result, Defendant's convictions will stand.

### B. Defendant Fails to Demonstrate that the Challenged Jury Instructions Evince Plain Error.

As mentioned, Defendant argues that Instructions 42, 43, 44, 46 and 48 impermissibly allowed the jury to convict him of the substantive robbery counts, even if the evidence did not establish that his accomplices consummated the robbery. (Def.'s Mot. at 19-22.) Specifically, Defendant hypothesizes that, because the instructions conflate an attempted robbery and a completed robbery, the jury may have convicted him of a completed robbery when, in fact, it only believed that the Government had proven an attempted robbery. (Def.'s Mot. at 19-22.) Accordingly, Defendant moves the Court to overturn his § 924(c) convictions. (Def.'s Mot. at 19-22.) The Court finds Defendant's argument unpersuasive.

First, Defendant fails to acknowledge that he now objects to jury instructions that he jointly proposed with the Government. (ECF Nos. 200, 222.) Indeed, Defendant had months to draft instructions that he deemed appropriate for this trial. And, as a result of that months-long process, he and the Government jointly submitted all of the jury instructions that Defendant now challenges. (ECF Nos. 200, 222.) Accordingly, the Court holds that Defendant has forfeited his challenge to these instructions under the invited error doctrine. *United States v. Simmons*, 999 F.3d 199, 220 (4th Cir. 2021) (declining to vacate the defendants' convictions when the district court gave an erroneous jury instruction, because the defendants "along with the Government, jointly proposed this instruction" "and thus invited the error."); *see also United States v. Mathis*,

16

932 F.3d 242, 257-58 (4th Cir. 2019) (refusing to address merits challenge to jury instructions that the defendant had proposed).

In any event, Defendant fails to show that the challenged instructions evince clear error. Under Federal Rule of Criminal Procedure 30(d), a party must lodge an objection to a jury instruction before the jury retires to deliberate. When a party fails to do so, plain error review controls the analysis.[7] Fed. R. Crim. P. 30(d); *Hastings*, 134 F.3d at 239. Here, as noted, Defendant did not raise this objection before the jury retired to deliberate. Indeed, he repeatedly represented to the Court his satisfaction with the substance of the jury instructions. (Tr. at 511:6-25; 512:1-15; 522:5-25; 523:1-3; 604:25; 605:1.) Accordingly, Defendant must prove that plain error infected the challenged instructions.

To show plain error, a defendant must demonstrate that: (1) an error occurred; (2) the error was plain; and, (3) the error affected his substantial rights.[8] *United States v. Caldwell*, __ F.4th __, 2021 WL 3356951, at *11 (4th Cir. 2021) (citing *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021)); *Hastings*, 134 F.3d at 239. An error affects substantial rights when there exists a "reasonable probability that, but for the error, the outcome of the proceedings would

---

[7] Although the plain error standard is most commonly employed in the appellate context, many district courts utilize it in this context as well. *See, e.g., United States v. Johnson*, 2017 WL 2531582, at *33, n.22 (S.D. W. Va. June 9, 2017) (collecting cases); *see also United States v. Sprouse*, 517 F. App'x 199, 204 (4th Cir. 2013) ("When a defendant fails to object to a jury instruction, even if there were no legal grounds for challenging the instruction at the time it was given, a district court should deny a motion for a new trial in the absence of plain error.").

[8] Even if a defendant satisfies the three threshold requirements, a court retains discretion to grant relief if it determines that the "error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013). However, when the defendant invites the error, the error "cannot be viewed as one that affected the fairness, integrity, or public reputation of judicial proceedings," because "recognizing an invited error would seriously undermine confidence in the integrity of the courts." *Id.* Accordingly, even assuming that Defendant met the first three requirements, the invited error doctrine would militate that the Court deny relief.

have been different." *Id.* at *11 (internal quotation marks and citations omitted). "Importantly, it is not enough for [the defendant] to establish that it is impossible to tell whether the verdict returned by the jury rested solely on the misinstruction." *Hastings*, 134 F.3d at 243. Instead, the court looks at what evidence the jury credited when convicting the defendant under the instructions given. *Id.* at 242. After ascertaining what evidence the jury credited, the court then asks whether the defendant has met his burden to show entitlement to relief for plain error. *Id.* at 244.

Here, Defendant makes no effort to meet his burden. Indeed, Defendant provides no argument on whether a reasonable probability exists that the jury would have only convicted him of attempted — rather than completed — robbery on the challenged counts if the Instructions had distinguished between the two. Instead, he engages in precisely the type of reasoning that the Fourth Circuit has squarely held does not satisfy the plain error standard. (Def's Mot. at 20-21 ("We do not know what the jury did because the instructions permitted the jury to convict [Defendant] of the predicate Hobbs act offenses even if the acts constituted attempts to interfere with commerce.").) Thus, Defendant presents no argument that — assuming the jury credited the Government's evidence — the jury likely only found him guilty of attempted robbery on the counts tied to a brandishing offense. Moreover, as the Court explained above when analyzing Defendant's sufficiency challenge, substantial evidence exists in the record to sustain the jury's verdict as to Counts Two, Four, Five, Twelve, Thirteen and Sixteen (which counts, of course, Defendant views as having the weakest factual basis for a completed robbery conviction).

Notwithstanding Defendant's failure to address the third prong of the plain error analysis, the Court also finds that the Instructions do not evince error. As noted above, both the Special Verdict Form and the Instructions specifically designated which robberies undergirded each

brandishing charge. (*See generally* Special Verdict Form; Court's Final Instructions to the Jury, at 67; Tr. at 588:1-25; 589:1-25; 590:1-23.) Moreover, the Special Verdict Form and the Instructions both specified which counts represented attempted robberies (and, as mentioned, those counts did not underpin any brandishing counts). (*See generally* Special Verdict Form; Court's Final Instructions to the Jury, at 55; Tr. at 580:12-15; 581:1-3.) Accordingly, the Instructions and the Special Verdict Form alerted the jury as to which counts were charged as either a completed or attempted robbery. As such, Defendant has not shown that the Instructions espoused an erroneous view of the law, because they simply do not instruct the jury to utilize an attempted robbery as a predicate for the § 924(c) convictions. Instead, they specifically distinguish between the attempted and completed robberies and tether each brandishing count to a completed robbery.

For all these reasons, the Court denies Defendant's Motion.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for Judgment of Acquittal and/or a New Trial (ECF No. 269).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

\_\_\_\_/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: August 12, 2021